

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Tom L. Hartley
Criminal District Attorney
Hidalgo County
Edinburg, Texas

Dear Sir:

Opinion No. O-2173
Re: When suit may be maintained
for 1939 delinquent taxes--
Delinquent taxes due at time
of judgment must be included
therein--Whether person hav-
ing contract to collect 1939
delinquent taxes is entitled
to certain commissions.

We received your letter dated April 2, 1940, re-
questing our opinion on the following questions which we
quote from your letter as follows:

"1. Where one-half of the 1939 taxes
have not been paid on or before November 30,
1939, and such taxes are not paid in full on
or before the 31st day of January, 1940, can
suit be maintained thereon, on or after the
same become delinquent on February 1, 1940?

"2. If judgment is taken in a delinquent
tax suit after February 1, 1940 in a suit
brought pursuant to the provisions of Article
7345b, and which judgment does not include
taxes for 1939, which under the provisions of
Article 7336 became delinquent on February 1,
1940, does the purchaser of the property at
foreclosure sale take the same free and clear
of all liens and claims for taxes against the
property for the year 1939?

Honorable Tom L. Hartley, Page 2

"3. If suit can be maintained on 1939
taxes which become delinquent, if not paid in
full on or before January 31, 1940, on Febru-
ary 1, 1940, is Mr. Hall entitled to the same
commission with reference to such taxes so col-
lected as on all other delinquent taxes?"

Section b of Article 7336, Vernon's Annotated
Civil Statutes, reads, in part, as follows:

"All poll taxes and all ad valorem taxes,
unless one-half ($\frac{1}{2}$) thereof have been paid on
or before November thirtieth as hereinabove pro-
vided, shall become delinquent if not paid prior
to February first of the year next succeeding
the year for which the return of the assessment
rolls of the county are made to the Comptroller
of Public Accounts. . ."

Article 7324, Vernon's Annotated Civil Statutes,
reads, in part, as follows:

"During the month of July each year, or
as soon thereafter as practicable, the col-
lector of taxes in each county of this State
shall mail to the tax roll address of each
owner of any lands or lots situated in the
county a notice showing the amount of taxes de-
linquent or past due and unpaid against all
such lands and lots as shown by the delinquent
tax record of the county on file in the office
of the tax collector, a duplicate of which shall
also have been filed in the office of the Comp-
troller of the State approved by such office,
but failure to send or receive such notice shall
be no defense to a suit brought for taxes. Such
notice shall also contain a brief description of
the lands and lots appearing delinquent and the
various sums or amounts due against such lands
and lots for each year as they appear to be de-
linquent, according to such records, and it shall
also recite that unless the owner of such lots
or land described therein shall pay to the tax
collector the amount of taxes, interest, penal-
ties and costs set forth in such notice within

Honorable Tom L. Hartley, Page 3

thirty days from the date of notice, that the
county or district attorney will institute
suits for the collection of such moneys and
for the foreclosure of the constitutional lien
against such lands and lots. . ." (Underscor-
ing ours)

Article 7326, Vernon's Annotated Civil Statutes,
reads, in part, as follows:

"Whenever any taxes on real estate have
become delinquent it shall be the duty of the
county attorney upon the expiration of the
thirty days notice provided for in the two pre-
ceding articles or as soon thereafter as prac-
ticable, to file suit in the name of the State
of Texas, in the district court of the county
where such real estate is situated, for the
total amount of taxes, interest, penalty and
costs that have remained unpaid for all years
since the thirty-first day of December, 1908,
with interest computed thereon to the time
fixed for the trial thereof at the rate of six
per cent per annum, and shall pray for judgment
for the payment of the several amounts so speci-
fied therein and shown to be due and unpaid by
the delinquent tax records of said county; and
also that such land be sold to satisfy said
judgment for all taxes, interest, penalty and
costs, and for such other relief as the State
may be entitled to under the law and facts. . ."

Under the provisions of Section b, Article 7336,
supra, the 1939 ad valorem taxes are now delinquent in
those instances where one-half ($\frac{1}{2}$) of said taxes were not
paid on or before November 30, 1939 and where they were
not paid in full on or before January 31, 1940.

Article 7324, supra, among other things, provides
that during the month of July or as soon thereafter as is
practicable, the collector of taxes shall mail to the tax
roll address of the delinquent tax owner a notice setting
out the amount of delinquent taxes. This Article further
provides that such notice shall contain a provision that,
unless said delinquent taxes are paid within 30 days from
the date of the notice, the county or district attorney will

Honorable Tom L. Hartley, Page 4

institute a suit for the collection of said taxes. Article 7326, supra, among other things, provides that the county attorney shall file suit for all delinquent taxes due on real estate upon the expiration of the 30 days notice as provided for in Article 7324, supra.

Prior to 1923, it was held that the giving of the notice, as provided for in Article 7324, supra, was a prerequisite to the maintenance of a suit by the state for the collection of delinquent ad valorem taxes. Hunt v. State, 110 Texas 204, 217 S. W. 1034.

After the decision in the Hunt case, supra, the Legislature in 1923, amended Article 7324, supra, by providing that "failure to send or receive such notice shall be no defense to a suit brought for taxes". This amendment was construed in Lindsay v. State (Comm. App) 44 S. W. (2d) 935 and we quote at length from said opinion:

"The plaintiff in error contends that, by the above statutory provisions, the giving of the prescribed notice to the record owner is made a condition precedent to a foreclosure suit; and that, since such condition precedent was not met, the plea in abatement should have been sustained. It will be observed that in article 7324 it is provided that 'failure to send or receive such notice shall be no defense to a suit brought for taxes.' As originally passed in the year 1915, the statute which now constitutes article 7324 did not contain this provision. If the said statute, as it was originally enacted, had remained unamended, there might have been some force to the contention made by the plaintiff in error. For in the year 1920 the Supreme Court had before it the original statute and held that the prescribed notice was a condition precedent to a foreclosure suit. Hunt v. State, 110 Tex. 204, 217 S. W. 1034. However, after the decision in that case was handed down, the Legislature, in the year 1923, so amended said statute as to embrace within its terms the provision last quoted. Acts Second Called Session, 1923, p. 32, c. 13. It is to be presumed that this amendment was made in view of the holding of the Supreme Court in the Hunt Case, and

Honorable Tom L. Hartley, Page 5

that the provision in question was incorporated
into the statute for the purpose of changing
the legal effect of the provision calling for
notice to property owners. The foregoing con-
siderations leave little doubt that the legisla-
tive intent was to strip from these last mentioned
provisions the attributes of a condition prece-
dent to a suit for taxes.

"It is earnestly contended that the pro-
vision in question has reference to such de-
fenses as go to the state's cause of action, and
not to the right of the state to sue. The pro-
vision declares that failure to give the notice
shall be 'no defense to a suit brought for taxes.
This language is sufficiently comprehensive to
exclude from the record owner any plea looking
to the defeat of a tax suit, on account of a
failure of the tax collector to perform his duty
as the statute prescribes; and such exclusion im-
plies that the prescribed notice should no longer
constitute a condition precedent to a suit for
taxes. This implication acquires additional
strength from the presumed fact that the Legisla-
ture had in mind the holding of the Supreme Court
in the Hunt Case. Besides, as the statute stood
when the Legislature came to amend it in 1923, it
did not mean that the omission of the tax collec-
tor to perform his duty, with respect to said
notice, was to constitute a defense to the state's
cause of action against the property owner. Barn-
hill v. State, 115 Tex. 258, 280 S. W. 732; State
v. Heath (Tex. Civ. App.) 220 S. W. 567. The law
presumes that the Legislature understood this when
it amended the statute in 1923, and that the pro-
vision in question was inserted for a useful pur-
pose. The only useful purpose the provision could
possibly serve was to render unavailable to the
property owner the privilege of having the suit
abated on account of the tax collector's delinquency."

It is clear that the failure of the collector of
taxes to send out the notice in question will not defeat the
suit for delinquent taxes. From reading the last sentence
from the above quoted opinion, we reach the conclusion that,
although failure to send or receive the notice in question
will not defeat the suit for delinquent taxes; nevertheless,

Honorable Tom L. Hartley, Page 6

a suit for 1939 delinquent taxes cannot be maintained until thirty days after the notice is given or could have been given by the collector of taxes to the delinquent property owner. We believe that this contention is supported by the language in Rice et al, v. State et al. (Civ. App. 1929) 20 S. W. (2) 1085, which reads as follows:

"By R. S. art. 7326, it is made the duty of the county attorney to institute suits to collect taxes which have become delinquent, but such suits are not to be filed until after the expiration of 30 days from the giving of the notice to the owners, as provided for by articles 7324 and 7325."

What we have said thus far applies only to the 1939 ad valorem taxes which became delinquent on February 1, 1940. It would seem that as to these taxes you are under no duty to maintain a suit therefore until the month of August, 1940, at the earliest, where there are no taxes delinquent for prior years. However, if you are impleaded in a tax suit by another taxing unit or you join in a suit brought by another taxing unit, you must of necessity, include the 1939 delinquent ad valorem taxes because of the provisions of Section 10 of Article 7345b. Said section reads as follows:

"Sec. 10. The purchaser of property sold for taxes in such foreclosure suit shall take title free and clear of all liens and claims for taxes against such property delinquent at the time of judgment in said suit to any taxing unit which was a party to said suit or which had been served with citation in said suit as required by this Act." (Underscoring ours)

It is our opinion that a suit can now be filed or a judgment can now be taken for taxes delinquent for the year or years prior to 1939. Because of the provisions of Section 10 of Article 7345b, supra, the 1939 taxes must of necessity be included in any judgment taken at this time. We think that Article 7345b, supra, further contemplates that a suit filed for delinquent taxes shall include all taxes delinquent at the time of the filing of the suit. For these reasons we advise you that, in those instances where there are taxes delinquent for years prior to 1939 in

Honorable Tom L. Hartley, Page 7

addition to those delinquent for 1939, you can now maintain a suit for all of the delinquent taxes and a judgment can be taken at any time.

We think what we have said thus far answers your first question.

In answer to your second question, we advise you that if a judgment is taken in a delinquent tax suit after February 1, 1940, in a suit brought pursuant to the provisions of Article 7345b, supra, and which judgment does not include the delinquent taxes for 1939, which, under the provisions of Article 7336, Section b, became delinquent on February 1, 1940, the purchaser of the property at the foreclosure sale takes the same free and clear of all liens and claims for taxes against the property for the year 1939. See our opinion No. O-1670.

We wish to emphasize that all delinquent taxes must be included in any judgment to which you are a party under the provisions of Article 7345b, notwithstanding what we have heretofore said about the time when a suit can be maintained for 1939 delinquent taxes.

In connection with your third question, you inform us in your letter that Mr. Hall has a contract with Hidalgo County to collect delinquent taxes and that the 1939 delinquent taxes are to be included within the terms of the contract as soon as a suit may be maintained thereon.

Because of the provisions of Article 7345b, supra, a strict burden is placed upon the tax collecting agencies to see that all taxes, delinquent at the time of judgment, are included in any judgment when that particular taxing unit is a party to a suit in which judgment is taken. Mr. Hall is under a duty to see that no judgment is taken for delinquent taxes in which Hidalgo County is a party unless all delinquent taxes, both county and State, and including those taxes delinquent for the year 1939, are included within said judgment.

We quote at length from the case of Mexia Independent School District v. City of Mexia (Supreme Court) 133 S. W. (2) 118 as follows:

Honorable Tom L. Hartley, Page 8

"It is further contended that the Act is
unconstitutional because it violates the pro-
visions of Article 3, sec. 55, and Article 8,
sec. 10, of our State Constitution, Vernon's
Ann. St. These Articles read as follows:

"Art. 3, sec. 55: 'The Legislature shall
have no power to release or extinguish, or to
authorize the releasing or extinguishing, in
whole or in part, the indebtedness, liability
or obligation of any corporation or individual,
to this State or to any county or defined sub-
division thereof, or other municipal corporation
therein, except delinquent taxes which have been
due for a period of at least ten years.'

"Article 8, sec. 10: 'The Legislature shall
have no power to release the inhabitants of, or
property in, any county, city or town from the
payment of taxes levied for State or county pur-
poses, unless in case of great public calamity
in any such county, city or town, when such release
may be made by a vote of two-thirds of each House
of the Legislature.'

"In this connection, it is not contended
that the statute under consideration undertakes
directly to release any taxes to anyone but it
is contended in effect that since the Act author-
izes the plaintiff to join as defendants all
other taxing units having liens against the prop-
erty and further provides that the purchaser of
the property sold at such foreclosure sale shall
take title thereto free of all liens for taxes
owing the taxing units that were parties to the
suit, it is possible for the representatives of
a taxing unit by failing to appear and file claim
for the taxes due to thereby waive and release to
the property owner the lien for such taxes. We
recognize that it is possible, under the Act In
cuestion, for such representatives, by their care-
lessness or otherwise, to fail to properly fore-
close the liens held by the taxing units which
they represent, but this is a danger inherent in
all governmental functions performed by human
agents. It has always been possible for commis-
sioners' courts by failing to assess property at

Honorable Tom L. Hartley, Page 9

its full value, or for attorneys by failing to properly prove up their cases in tax suits, or for jurors by improperly resolving questions of fact in favor of the tax debtor, to thereby deprive a taxing unit of its just dues, but the mere existence of this possibility does not render all our tax laws unconstitutional. It is presumed that all public officials will honestly perform their official duties, Anderson v. Polk, 117 Tex. 73, 297 S. W. 219, and the statute and constitutional provisions in question must be construed in the light of that presumption. When so construed, the statute is not unconstitutional on the grounds stated. This exact contention was made in the case of Willacy County Water Control and Improvement Dist. No. 1 v. Lewis, Tex. Civ. App., 119 S.W. 2d 159, and the San Antonio Court in that case, in an opinion by Associate Justice Slatton, overruled the contention. If the statute is followed and the officers perform their duty as they are presumed to do, it will be impossible to confer any special benefit on the tax debtor. . ." (Underscoring ours)

The County and State will lose their liens for 1939 delinquent taxes in those cases where they are parties to a suit wherein a judgment is taken that excluded the said 1939 delinquent taxes under the plain provision of Section 10 of Article 7345b, supra. It is Mr. Hall's duty to see that the lien for the 1939 taxes is not lost. A suit can now be maintained for the 1939 delinquent taxes in the manner herein indicated. We must say, therefore, that Mr. Hall is entitled to the commissions on the 1939 delinquent taxes according to the terms of his contract.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
Glenn R. Lewis
Assistant

By _____
Lee Shoptaw

APPROVED MAY 3, 1940

FIRST ASSISTANT
ATTORNEY GENERAL

LS:ew

APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN